I'm going to be very brief. The first item I wanted to cover was on the issue of the removal and the remand. I'm not sure if the brief was clear on this point. I just wanted to make mention of the fact that the reliance on the value of the $75,000 was based upon my demand letter as an offer to settle, and both under state and federal law, that should not have been admissible because it was an offer to settle. What authority do you have for that? I'm sorry, Your Honor? What is your authority for that? Your Honor, I thought about it this morning. I can submit that within a matter of a day or two. I always put that on the top, and I thought about it this morning sitting in the car in the parking lot, and it was too early to call my office to get the authority. I can submit that within a day or two. I'm not sure I understand your point, Mr. Greenberg. You sent in a demand letter asking for $74,999. That was after. The removal was based upon my initial offer to settle the case where I outlined the amount of the damages, and then the defendant used that as the basis of saying, well, if I'm adding up this amount of money, then based upon that amount of money, that it's clear, including general damages and punitive damages and attorney's fees, that the amount would exceed $75,000. But that letter was clearly an offer to settle, and both under state and federal law, that would be inadmissible. What about the offer of compromise for $74,999? That was after. After they filed their motion to remove it, we did that, and under CCP-998 in state court, that would be proof that if they accepted that, that the case would have settled for the $74,000 out amount of dollars. Wouldn't that suggest that the case, that the demand was more than $74,999 if you're going to settle for a dollar less? Obviously, I believe if the case goes to trial, that we will win substantially more than $75,000, but that wasn't the issue on the removal. The issue on the removal is not whether or not for sure that you will win more or less than $75,000, but on the face of the case at that point, what does it appear to be as to the value of the case? And they have to show, based upon the case as it stands at that point, that it's reasonable to say that the case is going to be worth more than $75,000. By their not accepting the $74,000, they're saying the case is not worth $74,000. So you can go both ways. Do I think the case is worth more than $75,000? Yes. Do they think the case is worth more than $75,000? No. If you say yes, isn't that the end of it? No. You're the plaintiff if you think the case is worth more than $75,000. But I'm willing to accept less than $75,000. That's not the issue. It's not what you're willing to accept. It's what you're trying to get. I don't believe so. You could be asking for the moon and the stars and get zero, but the issue is how much is in controversy. The amount in controversy, whenever you have general damages, is always a question of a once you get to the jury. The amount in controversy on a contract action is the face of the contract. The amount in controversy on a tort action is always speculative because there's always general damages, and you can't plead the amount of the general damages. What's your other substantive argument here? On the invasion of privacy issue, the question of invasion of privacy is basically a nice way to say whether or not it's none of your business. They asked Mr. Uribe two questions. The first was, please explain if Elena, or they asked more than two questions. The two major questions that were in invasion of privacy were, please explain if Elena Ornelas is pregnant. I know how I would have answered that question. Unfortunately, he answered it directly. Clearly, that's an invasion of privacy. The second was, please confirm if you are the father and how far along she is. It clearly is an invasion of privacy, especially since the company had a policy of not to interfere in the personal lives. AutoZone does not infringe on the personal lives of AutoZoners. That was their policy. He could rely upon that and should have been able to rely upon that when it was already clear at that point that under their own policy, he had not violated the policy because he had not been her supervisor for a period of more than ten months and she had only been pregnant approximately four months. Counsel, it seems to me that the issue at this moment is whether your pleading should have been dismissed on the pleadings or whether it should have moved ahead to summary judgment. I agree whether it should have been removed on the pleadings and on the summary judgment or was it a triable issue. I think, and that's exactly the point before the court, the question here today is not whether or not a jury was right or wrong. It's whether or not Judge Lew was right or wrong that there was no triable issue. And on page seven of the appellee's brief, they quote Judge Lew and he concluded that even if Uribe had been fired for dating AutoZone employee Elena Ornelas and not for loss of confidence, as AutoZone had argued, the termination did not violate public policy because the matter involved internal employer-employee relations, not society at large. That's clearly not a statement of the law. And accordingly, no public policy was at issue. Again, that's not the correct statement of the law. Even if there were a public policy against an employer's inquiry into a supervisor's alleged dating relationship with a non-supervisory employee, Uribe's rights were not violated because he did not have a reasonable expectation of privacy under the circumstances. And again, there's no question he did because the employer told him in their policy AutoZone does not infringe on the personal lives of AutoZoners. And the jury could... Do you have a policy against managers dating subordinates? The policy was that a manager could not date, a supervisor could not date someone in their chain of command. This person had not been in his chain of command for over ten months. And all of the evidence was that he didn't date her until after she moved outside of his chain of command. Well, that's not the only evidence. Wasn't there evidence that they were romantically involved beforehand? Not while he was in her chain of command. Weren't seen kissing in the parking lot? Not while they were in the chain of command. You sure about that? Didn't they investigate that in January of 2002 and they denied it? Well, they denied it. So if they denied it, there's nothing... Turns out the denial wasn't true. Well, they investigated it. They investigated it and found... And subsequent facts proved it to be false. No, it didn't, Your Honor. It didn't prove that he was kissing her in the parking lot. It proved... Someone said that they were kissing in the parking lot. They both denied it. There was no substantiation of that. Did you want to reserve your remaining time? Yes, Your Honor. Thank you very much. Morning. Jacobi for defendant in the Pele Auto Zone. Just very briefly on the jurisdictional issue, it's the law of the circuit, Cohen v. PetSmart, Inc., 281 F. 3rd 837, that a court, when considering the propriety of removal, can look at pre-litigation settlement demand letters. In fact, they can look at post-litigation settlement demand letters, which is why both the 998 offer and the pre-litigation demand letter are at issue. And it's worth noting that today the only two claims that the plaintiff is trying to save in this appeal are the claims that are punitive damage enabling. So if there was any doubt that what was in controversy was much more than $75,000, the proof is in the pudding that here we are today, years later, and the only claims the plaintiff is trying to save, the appellant's trying to save, are his punitive damage enabling claims. Clearly, there was more than $75,000 at stake. What's really at issue on the substantive issue is a balance between the right of an employer to vindicate an anti-fraternization policy and to prevent sexual harassment versus the right of a supervisor to be free from inquiries about his personal life. Now, there's no dispute under California law that anti-fraternization policies are legal, Crozier v. UPS says that's true. And there's no dispute under California law that the claim that was dismissed on the judgment on the pleadings, the public policy violation supported by California Labor Code 96K is not a basis to go forward. That was decided by the California Court of Appeal during the course of this case in Barbie, a case called Barbie, which is cited in our brief, which says that Labor Code 96K. The Barbie case was dismissed on summary judgment counsel. That's true, but in the Barbie case, the court said that Labor Code 96K implicates no public policy. It's also to be noted that the reason why Judge Liu dismissed the 96K base claim was that the statute itself says that that claim must be brought before the labor commissioner and the plaintiff didn't exhaust. As I understand it, there were four claims, one dismissed on summary judgment, three dismissed on the pleadings. And the one that concerns me is the one, the claim of violation of constitutional right to privacy. And that was the one that was dismissed on summary judgment. So if I may, I'll briefly address that. I thought it was. No, you're incorrect. The public policy one, claim three was dismissed on summary judgment. Well, there were, there was an independent cause of action for invasion of the right of privacy. That was the first claim. Right. And that was dismissed. That was based on judgment on the pleading. Yes. And then there was the wrongful termination and violation of public policy based upon the constitutional provision. And with respect to that. But I think Judge Fletcher's concern is with the one that was, with the first claim that was dismissed on judgment on the pleading. Yes. Well, in support of that, the district court noted that internal investigations generally don't implicate rights to privacy. And that's the Eisenberg case. So there is no public policy at stake. Now, the issue of whether his privacy was invaded. Clearly, there was an expectation on the part of managers that if you dates people within the company, you can be questioned on this. The policy was very clear. Well, even though they're not in the chain of command. Well, the policy says if they're in the direct or indirect reporting line. But the question, what I think the mistake that Appellant has made is that he's relying on his response. That no, I didn't date her while she was in my chain of command. But what's not at stake isn't the answer to the question. What's at stake is the question itself. Is it an invasion of an employer's employee's right to privacy to ask questions about who they're dating? And I think California law is very, very clear that to vindicate, to protect employees against sexual harassment, that supervisors have a lower expectation of privacy than people might have in their ordinary lives. And if we accept the plaintiff's pleadings, which we must. There was an invasion of privacy because at the time that they were dating, they were not in any kind of chain of command relationship. Well, that's what he says. That's what he says. So it takes an affirmative defense on your part, which the law is very clear, can't be tried out on the pleadings. You need to flesh it out and go on summary judgment. Well, but I don't think that there is any dispute that AutoZone asked the question. AutoZone concedes that they asked the question, were you dating her? And are you the father? So those facts are not a dispute. Well, sure. That's right. And that shows a violation of privacy if there's no countervailing interest in asking those questions. And we believe that one, he should have had, Mr. Uribe should have had a reasonable expectation to be asked those questions because of what the policy said. But I just, if we accept his version, no. I guess where we respectfully disagree is that the invasion is the question itself. And there's no dispute about the question. Are you saying they have the right to ask any employee about their romantic life? No, I think that not all questions are within bounds. But I think questions involving dating between a supervisor and a subordinate are in bounds because... Okay, but Judge Fletcher's point is at the time they were asking him the question, she was not a subordinate. Well, she was. In fact, I think you were correct when you challenged Mr. Greenberg on the record. When they were accused of hugging each other, they were clearly in a direct reporting relationship. So just to make sure we understand your point of view, at the time the questions were asked, she was not a subordinate. But they were investigating whether at the time that she was a subordinate, whether they were violating the policy. Is that correct? That's correct. And in truth of fact, while I guess it's impossible to, without medical evidence and even with medical evidence, to determine her true date of conception, if you backdate it from the time that she was asked the question, the pregnancy began right around the time that she was transferred. And the whole purpose of the question was to establish the timeline. So your point is that they had the right to inquire about whether she was engaged in a romantic relationship with a subordinate at the time that she was a subordinate? That's exactly right. If she had just been another employee at a different store, not under his chain of command, that would have been a different... And the proof is in the pudding. Mr. Uribe began openly dating her as soon as she was transferred out of the store. And that was... All those facts, though, are not alleged in the complaint. In the motion for judgment on the pleadings, you just look at what's alleged in the complaint. Well, what's... You look at the answer, and you say, on these facts, is the plaintiff entitled to relate? I think... You don't go beyond that, because if you do, then you're going into summary judgment. Well, I think that that's true. But what is alleged in the complaint... Aren't we supposed to follow the rules? I think the court... I think Judge Liu's ruling was consistent with the rules with respect to... He identified the invasion of privacy as the inquiry after they were not in a reporting relationship. And I think the very strong public policy of California permits that inquiry. Imagine the fact slightly differently, that this was a sexual harassment situation, and he transferred her out of his district for the sole purpose of dating her, that he transferred her out of this district for the sole purpose of engaging in a sexual relationship. That could have been. And that's why what was decided on the judgment on the pleadings was correct, because employers need the right to make these inquiries. Well, counsel, you just have to look at the pleadings. That's all you look at when it's a judgment on the pleadings. I'm not suggesting that there might not be a basis on summary judgment, but I think the judge was a little quick at the trigger. Well, in any event, the invasion of privacy claim is also a subset of the public policy claim. I don't think the invasion of privacy claim could have ever withstood summary judgment if the public policy claim, which is essentially a right to privacy claim under the California Constitution, didn't survive summary judgment. So even if it's true that Judge Liu prematurely dismissed the stand-alone common law claim for invasion of privacy, the result would have been the same if that claim would have gone to summary judgment, because the standard would be no different. Assessing the constitutional right to privacy claim would be no different than assessing the common law right to privacy claim. And I think this case, just in conclusion, has a significant amount of public policy import. My firm is an employment law firm. We advise clients all the time on sexual harassment investigations. And I can tell you that human resource investigators who are in the position that Michelle Shearer was are sometimes resonant to ask sensitive questions about sensitive issues. And if the courts start drawing arbitrary lines that you can ask this, but you can't ask that, I think — But that's not what we would be doing in this case, counsel. Well, I'm concerned that that is what the plaintiffs are asking for, because even now the big complaint is that the question shouldn't have been asked. That was the basis of the appellant's argument. And I would suggest to you that irrespective of the answer, that AutoZone had the right to ask those questions, and that irrespective of when Judge Liu dismissed the common law privacy claim, on summary judgment, on a full record, he was able to decide that AutoZone didn't run afoul of Mr. Uribe's privacy expectations. Thank you. Mr. Greenberg, you get the last word. You've got about a minute and a half left. Thank you, Your Honor. I agree with counsel that an employer has the right to investigate sexual harassment. In this case, there was never, ever a claim by Ms. Arnelas or anybody else that she had been sexually harassed or there was any sexual harassment whatsoever, and all the evidence shows to the contrary. There's no basis, even if there was a sexual harassment claim, there's no basis to ask those two questions. Please explain if she's pregnant and if you are the father. That's so far beyond the bounds of reasonableness, and I agree with the panel that it's a triable issue. That's all I want here today is to get back to court. I didn't say it's a triable issue. There's a difference between a motion for judgment on the pleadings and whether there's, once you get past that, whether there's a genuine triable issue of fact. Well, at least to get to the point where we commence discovery and show whether or not there is, in fact, a triable issue of fact. There's no question in my mind that when both Mr. Uribe and his current wife. I noticed that in the colloquy with Judge Blue, you had asked for leave to amend when he announced that he was going to grant judgment on the pleadings. What facts were you intending to add to the complaint? I don't recall, Your Honor, that I did ask for that. I haven't gone back to research that. I haven't gone back to research that. Judge Blue said that you didn't have the right to amend. If we had amended, Your Honor, my recollection of this case is that both Mr. Uribe and his current wife, who he was dating at that time, there was no sexual harassment here whatsoever. Everything was mutual. They both understood the company policy. He was a good employee. He was on a fast track. He understood the company policy. So she transferred to someplace else. I would have reiterated or made those facts more clear. Thank you, Mr. Greenberg. Mr. Jacoby, the case is submitted.
judges: B. Fletcher, Silverman, Paez